# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDEE RENEE MEDSKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:22-cv-00711-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　　INTRODUCTION

Plaintiff Candee Renee Medsker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.　　BACKGROUND

Plaintiff was born on August 5, 1973, completed high school, and previously worked as a caregiver in a retirement home. (Administrative Record ("AR") 32, 45, 47, 55, 89, 110, 195.) Plaintiff protectively filed an application for SSI payments on November 6, 2019, alleging she became disabled on September 1, 2019, due to heart attack, asthma, seizures, high blood pressure,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

anxiety, and depression. (AR 22, 89–91, 120, 129, 195–96, 436.) Plaintiff was 46 years old on the date the application was filed. (AR 32, 90.)

**A.    Relevant Evidence of Record[2]**

    **1.    Medical Evidence**

Plaintiff sustained a traumatic brain injury at the age of 16 due to a car accident. (*See* AR 80, 398.) She received an MRI of her head in December 2018, which indicated multifocal areas of chronic encephalomalacia in the frontotemporal regions bilaterally, with the left side greater than the right, likely due to remote trauma, but no acute intracranial abnormality. (AR 466–67.)

In March 2020, Plaintiff visited neurologist Dr. Melvin R. Helm, M.D., at the California Headache and Balance Center. (AR 367–68.) Dr. Helm noted Plaintiff's ambulatory EEG did not reveal epileptic activity, but she had severe depression. (AR 367.) He recommended Plaintiff continue not to drive and to increase her anti-depressant medications. (AR 367–68.) At another visit in April 2020, Dr. Helm recommended Plaintiff switch to a different medication for both depression and pain. (AR 370.) Later that month, Plaintiff reported that the new medication was helping and she did not feel depressed. (AR 371.) Plaintiff also requested another MRI of her head. (AR 371.)

The repeat head MRI conducted in May 2020 revealed encephalomalaciac changes involving the frontal and temporal lobes, with the left greater than the right, compatible with Plaintiff's history of past trauma. (AR 360–61.) The MRI further indicated no acute intracranial abnormality, intracranial mass, hemorrhage, midline shift, or acute ischemia, and no significant interval change compared to the December 2018 MRI. (AR 361.) Plaintiff continued to report severe headaches on the left side of her head. (AR 373.) By July 2020, Plaintiff reported a slight reduction in her headaches based on new medication prescribed by Dr. Helm, though her headaches were still present on a daily basis. (AR 564.)

In October 2020, at another visit with Dr. Helm, Plaintiff complained of continued headaches and dizziness that occurred daily for six or more hours. (AR 566.) Plaintiff, however, denied any

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

altered mental status and denied going to the emergency room or following up with her primary care physician. (AR 566.) Plaintiff indicated she wanted to hold off on physical therapy for her dizziness and requested to be referred to a sleep study. (AR 567.) In November 2020, Dr. Helm treated Plaintiff's headaches with Botox. (AR 569.)

**2.      Opinion Evidence**

a. James P. Murphy, Ph.D.

On March 15, 2019, Dr. James P. Murphy, Ph.D., conducted a consultive psychological evaluation of Plaintiff. (AR 310–18.) Dr. Murphy observed that Plaintiff ambulated without assistance and her motor function appeared normal. (AR 311.) Her speech was adequate for sound, clarity, and articulation. (AR 311.) Dr. Murphy noted Plaintiff did not appear to have problems with handling daily activities such as bathing, eating meals, and socializing, and her appearance indicated she had the ability to attend to details without requiring assistance. (AR 318.) Plaintiff complained she was unable to work due to epilepsy, heart issues, asthma, depression, and anxiety. (AR 311.) She denied ever being hospitalized for psychiatric reasons, and though she was prescribed psychotropic medication, she had not taken the medication in six months. (AR 311, 316.)

Upon conducting a mental status examination, Dr. Murphy found that Plaintiff's attention was within normal limits and her thoughts were clear, coherent, and age appropriate, though he noted Plaintiff had some difficulty handling basic ideas. (AR 313.) During the interview and testing session, Plaintiff did not appear to be distracted by internal stimuli. (AR 313.) Dr. Murphy also found that Plaintiff's general fund of knowledge was accurate. (AR 314.) While it appeared Plaintiff experienced some memory deficits, Dr. Murphy opined that Plaintiff did not have restrictions concerning daily activities. (AR 314–16.) He further opined that Plaintiff's ability to handle problems with concentration, persistence, and pace will not jeopardize her ability to work, and she did not appear to have difficulty understanding, carrying out, and remembering simple instructions. (AR 316–17.) Dr. Murphy concluded Plaintiff did not appear to have limitations due to mental impairment. (AR 317.)

b.  <u>Roger Wagner, M.D.</u>

On February 28, 2020, Dr. Roger Wagner, M.D., conducted a consultative comprehensive internal medicine evaluation of Plaintiff. (AR 339–45.) Plaintiff reported that she has a history of seizures, with the first seizure happening seven years ago and the last seizure happening about one week before. (AR 339.) Plaintiff indicated she has one of these seizure episodes every one to two weeks. (AR 339.)  She could not recall if she had any surgical intervention for injuries caused by the car accident that occurred when she was 16 years old. (AR 340.) Dr. Wagner noted Plaintiff had never lost her driver's license despite her reports of having seizure episodes every one to two weeks. (AR 340.)

Plaintiff indicated she cooks, cleans, drives occasionally, goes shopping, walks, and is able to perform activities of daily living without assistance. (AR 340.) Dr. Wagner observed that Plaintiff was able to easily ambulate and walk at a normal speed without assistance. (AR 341.) She had normal gait and coordination, did not use an assistive device like a cane, and exhibited good dexterity and flexibility. (AR 341–42.) Dr. Wanger opined that Plaintiff had no limitations with normal breaks, but due to the seizure episodes, she should not climb ladders or scaffolds, and she should not work at unprotected heights or with heavy machinery. (AR 343–44.)

c.  <u>Jerry R. Livesay, Ph.D.</u>

On March 14, 2020, Dr. Jerry R. Livesay, Ph.D., conducted a consultive mental health evaluation of Plaintiff. (AR 347–54.) Plaintiff complained of epilepsy and explained that seizures started eight years ago. (AR 348.) She indicated her neurologist opined the epilepsy stemmed from brain damage caused by the car accident that occurred when she was younger. (AR 348.) Plaintiff reported some success with medication management of seizures, but stated she has five or six minor seizures per week, and the seizures are getting worse. (AR 348.) Dr. Livesay noted Plaintiff had no history of psychiatric hospitalization or mental health outpatient treatment. (AR 349.) Dr. Livesay observed that Plaintiff spoke slowly, had some difficulty finding words, and had memory deficits. (AR 350–52.) He diagnosed Plaintiff with neurocognitive disorder due to traumatic brain injury and depressive disorder due to epilepsy. (AR 353.)

4

### 3. Plaintiff's Adult Function Report

On January 17, 2020, Plaintiff completed an adult function report describing how her impairments limited her activities. (AR 232–43.) Plaintiff stated that her neurologist, Dr. Helm, said she cannot drive. (AR 236.) Plaintiff reported that her balance and equilibrium were "totally off," and she has trouble walking and focusing, and reading causes her to become unfocused and gives her a headache. (AR 236, 239.)

On a normal day, Plaintiff wakes up and does the dishes and laundry. (AR 237–38.) She usually alternates between sleeping and being awake every two to four hours. (AR 237.) As a result of her impairments, she wakes up with her legs and arms twitching and jerking. (AR 237.) Plaintiff is able to dress herself and use the restroom on her own. (AR 237.) She can sometimes prepare her own meals and needs to be reminded to take her medications. (AR 237–38.) Plaintiff goes outside every few hours, goes shopping for groceries about once a week, and socializes by talking on the phone or texting. (AR 239–40.) She goes to church and Walmart about once a week and is able to pay the bills. (AR 239–40.)

According to Plaintiff, she has memory problems "all around" and gets side-tracked easily. (AR 241.) She has trouble following and understanding instructions, but later stated she follows written instructions well and can follow spoken instructions as long as she is walked through them. (AR 241.) Plaintiff stated she can only pay attention for 30 minutes, she gets along well with authority figures, and stress causes her seizures. (AR 241–42.)

Plaintiff stated that she was in a life-threatening accident in 1990, causing her to have to relearn everything, though she was able to graduate high school. (AR 243.) She stated she became used to not being able to remember her childhood, and now with her epilepsy, she has memory issues and cannot take complete care of herself. (AR 243.)

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on April 8, 2020, and again on reconsideration on July 10, 2020. (AR 22, 89, 108, 110, 120, 129.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 136.) The ALJ conducted a hearing on January 7, 2021. (AR 39–62.) Plaintiff appeared at the hearing with her attorney

representative and testified as to her alleged disabling conditions and work history. (AR 42, 45–55.) A Vocational Expert ("VE") also testified at the hearing. (AR 55–60.)

### 1.     Plaintiff's Testimony

At the hearing on January 7, 2021, Plaintiff testified that she was in a car accident on July 1, 1990, and was hit in the back of the head with her father's "shop jack." (AR 45–46.) Plaintiff explained that this "jack" was a tool used by her father in his shop to work on the tires of her car. (AR 46.) As a result of the accident, Plaintiff was in a coma for nine days and "had to relearn everything." (AR 45.) On the alleged onset date of September 1, 2019, Plaintiff testified that her doctors verified that she had epilepsy from the accident. (AR 45–46.)

Plaintiff lives alone with her adult daughters, the youngest of which takes her back and forth to things like doctor's appointments. (AR 46–47.) She stopped working because she had trouble holding onto things, felt unstable to the point where she had started running into walls, and had difficulty focusing. (AR 47–48.) She stopped driving the day she had her first seizure. (AR 48.) According to Plaintiff, she is prevented from working a full-time job due to her difficulty focusing on things and falling asleep any time she sits down. (AR 49.) She takes medication for epilepsy, heart issues, asthma, allergies, and headaches. (AR 49.) Plaintiff smokes half to a full pack a day of cigarettes, but does not drink alcohol. (AR 50.)

Plaintiff further testified that after her accident in 1990, she was awarded Social Security disability benefits, but it was cut off after she married her husband, from whom she is now separated. (AR 51.) Her daughters do the cooking, cleaning, and shopping for the household. (AR 52.) Whenever Plaintiff sits or lays, she gets uncomfortable or falls asleep. (AR 52.) She estimated she is able to lift about 10 pounds. (AR 52.) Plaintiff feels numbness or tingling in her hands and feet. (AR 53.) The last time Plaintiff experienced a seizure was several years ago, but she has been going back to the neurologist because she feels she is "getting ready" to have another seizure. (AR 53.) Plaintiff stated she has never worked for 40 hours a week on a consistent basis. (AR 56.)

### 2.     The VE's Testimony

At the hearing on January 7, 2021, the ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history and skills. (AR 56.) The VE was to assume this person was

able to work at the light exertional level with the following restrictions: the person could stand or walk for four hours in an eight-hour day; no climbing ladders, ropes, or scaffolds; occasional balancing; frequent climbing ramps or stairs; frequent kneeling, stooping, crouching, or crawling; and the person must avoid concentrated exposure to hazards such as unprotected heights, dangerous moving machinery, and respiratory irritants. (AR 56–57.) The VE testified that such a person could perform certain jobs in the national economy such as office helper, Dictionary of Operational Titles (DOT) code 239.567-010, with a light exertional level and specific vocational preparation (SVP)[3] of 2; mail clerk, DOT code 209.687-026, with a light exertional level and SVP of 2; and inspector/packager, DOT code 559.687-074, with a light exertional level and SVP of 2. (AR 57.)

The ALJ then asked the VE to consider a person with the same limitations as in the first hypothetical, but with additional restrictions of simple, routine, and repetitive tasks; simple instructions; and simple directions. (AR 57.) The VE testified that such a person would be capable of performing all three jobs listed in the first hypothetical. (AR 58.) The VE also testified that employers typically do not tolerate employees being off task for more than 15% of the workday or employees being absent for more than one day per month. (AR 58.) The VE stated if the person was further restricted to no more than occasional handling and fingering, that person would not be able to perform the three jobs previously listed by the VE. (AR 58.)

**C.    The ALJ's Decision**

In a decision dated May 5, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 22–34.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 24–34.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since November 6, 2019, the application date (step one). (AR 24.) At step two, the ALJ found Plaintiff's following impairments to be severe: asthma; chronic obstructive pulmonary disease; migraines; coronary artery disease; hypertension; dyslipidemia; and obesity. (*Id*.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

7

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 27–28.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except she can stand and/or walk for four hours in an eight-hour workday.  She can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds.  She can occasionally balance and frequently kneel, stoop, crouch, and crawl.  She must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.  She must avoid concentrated exposure to respiratory irritants.

(AR 28–29.)[5]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 29.)

The ALJ determined that Plaintiff had no past relevant work (step four) and that, given her RFC, she could perform a significant number of jobs in the national economy, specifically office helper, mail clerk, and inspector/hand packager (step five).  (AR 32–33.)  The ALJ concluded Plaintiff was not disabled since November 6, 2019, the application date.  (AR 33.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 7, 2022.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*

Commissioner.  20 C.F.R. § 416.1481.

### III. LEGAL STANDARD

#### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

9

"However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*,

533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred at step two in failing to find the impairment of traumatic brain injury to be severe, thus resulting in an incomplete mental RFC assessment. (Doc. 15 at 3, 6–12.) The Acting Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments because the record provides minimal objective findings related to her traumatic brain injury demonstrating cognitive limitations. (Doc. 16 at 5.) For the reasons explained below, the Court finds that the ALJ did not err.

**A.   Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity"). In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.   The ALJ Did Not Harmfully Err in Formulating Plaintiff's RFC**

According to the record, the only expert medical opinions regarding Plaintiff's traumatic brain injury are those of Dr. Livesay and Dr. Wagner. (*See* AR 24–25, 339–44, 347–53.) The ALJ

11

considered these opinions in the context of the longitudinal record and found them to be unpersuasive and partially persuasive, respectively, which Plaintiff does not challenge. (AR 24, 27, 31.) The ALJ explained that Dr. Livesay's opinion was not entirely consistent with his own observations that Plaintiff had an average range of intellect and could perform multi-step tasks and math calculations. (AR 27; *see also* AR 352–53.) The ALJ also found that Dr. Livesay's opinion was inconsistent with the longitudinal evidence in the record showing Plaintiff's lack of treatment for a mental health condition (*see, e.g.*, AR 311, 316, 349) and her reports that she can go shopping, handle her finances, use a telephone for activities, and care for her needs without interference from psychological conditions (*see* AR 48–49, 237–40). (AR 27.) Similarly, the ALJ explained that Dr. Wagner's opinion was not entirely consistent with his own findings and indications in the record that Plaintiff can ambulate normally, retained full motor function in her extremities, and her seizures were infrequent. (AR 24–25, 31 (citing AR 53, 254–55, 335, 340, 342–44).)

The ALJ, as they are charged to do, then interpreted that evidence in conjunction with other evidence in the record, such as medical records showing that Plaintiff denied feeling dizzy and a lack of epileptic activity (*see* AR 24–25 (citing AR 322, 367)), and formulated Plaintiff's RFC. In coming to this determination, the ALJ also noted that none of Plaintiff's treatment providers observed inappropriate social behavior, nor had they diagnosed her with an attention-deficit disorder or documented significant problems with concentration during her appointments, and there was no indication that Plaintiff required emergency intervention or psychiatric hospitalization for her mental health. (AR 26.) The ALJ also considered Plaintiff's reports that she can perform household chores and care for her personal needs, as well as her indications that her limitations were due to physical impairments, not mental impairments. (AR 26 (citing AR 48–49, 237–40, 340, 350).) The ALJ was entitled to review and interpret this evidence. *See, e.g., Ann M. v. Berryhill*, No. 5:18-cv-01080-KES, 2019 WL 1171160, at \*6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by . . . physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez v. Colvin*, No. 1:15-cv-00102-EPG, 2016 WL 3541450, at \*6 (E.D. Cal. June 24, 2016)); *Mills v.*

*Comm'r of Soc. Sec.*, No. 2:13-cv-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *id*. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Plaintiff does not specify what additional functional limitations stemming from the traumatic brain injury in the record were not accounted for in the ALJ's RFC assessment, and how such limitations would eliminate all jobs in the national economy that Plaintiff could have performed. *See* Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985) ("Mental impairments may or may not prevent the performance of a person's past jobs. They may or may not prevent an individual from transferring work skills."); *see also Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *7 (E.D. Cal. June 1, 2023). To the contrary, at the hearing on January 7, 2021, the VE testified that even if further mental restrictions (simple, routine, and repetitive tasks, simple instructions, and simple directions) were added, a person of Plaintiff's age, education, past work history and skills would be capable of performing all three jobs the VE previously identified. (AR 57–58.) Nor does Plaintiff otherwise show any inconsistency between the record and her RFC. To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**C.      Even Assuming *Arguendo* the ALJ Did Err, Such Error was Harmless**

Even had the ALJ erred by failing to conclude that Plaintiff had a severe mental impairment due to traumatic brain injury, such error was, at most, harmless. A claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See, e.g., Burch*, 400 F.3d at 682 ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *Hickman v. Comm'r Soc. Sec. Admin.*, 399 Fed. Appx. 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four).

At step two, the ALJ determined that Plaintiff's severe impairments included asthma, chronic obstructive pulmonary disease, migraines, coronary artery disease, hypertension, dyslipidemia, and obesity. (AR 24.) The ALJ then proceeded to the step three analysis. (*See* AR 27.) Because Plaintiff's claims were not screened out at step two, she was not prejudiced by any error in the step two analysis. *See Wilson v. Kijakazi*, No. 1:20-cv-01753-SKO, 2022 WL 3908428, at *12 (E.D. Cal. Aug. 30, 2022). The ALJ further stated in RFC findings that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR 29). *See, e.g., Sara Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("the ALJ specifically noted that she considered *all symptoms* in assessing the [RFC] . . . Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.") (original italics).

14

In sum, the Court concludes that the ALJ properly weighed the medical evidence and did not harmfully err in their assessment of Plaintiff's RFC. *See Wilson*, 2022 WL 3908428, at *2; *Kendall v. Saul*, No. 1:19-cv-01485-SKO, 2021 WL 736268, at *13–14 (E.D. Cal. Feb. 25, 2021).

### V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:     **July 12, 2023**                              /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE